**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | Case No. 3:19-cr-014 |
| | : | |
| v. | : | Judge Thomas M. Rose |
| | : | |
| Kevin Dorn, | : | |
| | : | |
| Defendant. | : | |

---

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF 73).**

---

Pending before the Court is Motion for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. 3582(c)(1)(A), the First Step Act of 2018 and Policy Statement at 1B1.13. (ECF 73). The Court is also in receipt of supplements filed by Defendant, (ECF 75, 79), to which the government has responded. (ECF 76). Dorn is currently incarcerated at FCI Lexington. The matter is ripe for review.

**I.      BACKGROUND**

On or about September 25, 2018 Kevin Dorn, along with two other individuals, conspired to and did possess with intent to distribute cocaine and fentanyl, which are controlled substances. On September 25, 2018, law enforcement observed a vehicle they recognized as having fled from law enforcement on a previous occasion. Due to excessive window tint and the prior flight, law enforcement coordinated an encounter with the vehicle while it was stopped at a gas station. Dorn and two other individuals were in the vehicle. Within the vehicle were firearms and a magazine of ammunition in plain view.

1

During a search of the vehicle, law enforcement located multiple firearms, bags of gel caps containing suspected narcotics, drug paraphernalia, and cell phones.  These items were seized and the suspected narcotics were submitted to the Miami Valley Regional Crime Laboratory for testing.  Of the multiple firearms located in the vehicle, Dorn was found to be in possession of the FN Model Five-Seven, 5.7x28 caliber handgun with twenty-one rounds of ammunition including one in the chamber.  The twenty-one rounds of ammunition were 5.7x28 caliber ammunition commonly used as rifle rounds.  Dorn had previously been convicted of a felony offense punishable by a term of imprisonment exceeding one year and was prohibited from lawfully possessing a firearm.  The laboratory reports confirmed the suspected narcotics to be cocaine, weighing approximately 9.20 grams and a mixture of valeryl fentanyl and fentanyl weighing approximately 9.45 grams.  Dorn and the co-conspirators possessed the cocaine and the fentanyl mixture with the intention of selling the drugs for personal profit.

In August 2019, Dorn pled guilty to one count of Conspiracy to Possess with Intent to Distribute Cocaine and Valeryl Fentanyl, in violation of 2l U.S.C. § 846.  His advisory sentencing guidelines range was 41 to 51 months in prison.  The U.S. Probation Office's Presentence Investigation Report noted that Dorn had no chronic or serious health issues, indicated that he is healthy and is not currently prescribed any medications.  The Court sentenced him to 41 months imprisonment, at the bottom of the advisory sentencing guidelines range.  Dorn is now serving his sentence at Federal Medical Center (FMC) Lexington, Lexington, KY.  To date, Dorn has served roughly 15 months in prison.  Dorn is presently 32 years old. His projected release date is March 12, 2022. See https://www.bop.gov/inmateloc.

On May 28, 2020, Dorn (Inmate #78240061) sent an email to the Warden requesting compassionate release.  On July 7, 2020, the Warden denied his request. (ECF 76-1).  Dorn has

now filed a motion seeking compassionate release, citing the risks posed by the COVID-19 pandemic. Dorn has no record of any disciplinary action, nor does he have any aggravating medical conditions.

## II. ANALYSIS

Dorn asks the Court to grant him a reduction in sentence as permitted by 18 U.S.C. § 3582(c)(1)(A)(i) and to consider what he alleges are extraordinary and compelling reasons for doing so.

Section 603(b) of the First Step Act, which was signed into law on December 21, 2018, modified 18 U.S.C. § 3582 to allow a defendant to bring a motion on his or her own behalf either "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); Pub L. No. 115-391, 132 Stat. 5194; *see also United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020) ("If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must fully exhaust all administrative rights to appeal with the prison or wait 30 days after his first request to the prison," and "[p]risoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them") (internal quotation marks omitted) (alterations adopted).

### Legal Standards

A district court has limited authority to modify a sentence. "Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants such authority in certain limited circumstances. It provides in part:

3

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court … may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i). Thus, the Court can modify a term of imprisonment if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) such a reduction is appropriate "after considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A)(i); *see also United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020); *United States v. Spencer*, No. 20-3721, 2020 U.S. App. LEXIS 28051, at *4, 2020 WL 5498932 (6th Cir. Sept. 2, 2020).

First, commentary to an applicable policy statement issued by the Sentencing Commission identifies four, relatively narrow, circumstances in which "extraordinary and compelling reasons" may exist. *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"). United States Sentencing Commission, Guidelines Manual, § 1B1.13, at cmt. n.1 (Nov. 1, 2018) (Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)). Those four circumstances are: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) other extraordinary and compelling reasons. *Id.* Each of the four circumstances has its own parameters. *Id.* Commentary also confirms that, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." *Id.* at cmt.

4

n.3; *see also United States v. Keefer*, No. 19-4148, 2020 U.S. App. LEXIS 32723, at *6-7, 2020 WL 6112795 (6th Cir. Oct. 16, 2020) ("[i]n Application Note 1 to § 1B1.13, the Commission also listed the 'extraordinary and compelling reasons' that might entitle a defendant to a sentence reduction").

Second, that same applicable policy statement also requires that the defendant not be "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*; *see also Kincaid*, 802 F. App'x at 188; *Spencer*, 2020 U.S. App. LEXIS 28051, at *4 ("[t]he district court must also find that the defendant is not a danger to the safety of any other person or to the community") (internal quotation marks omitted). Section 3142(g) provides factors to be considered in making that "danger to the safety" determination.

Specifically, 18 U.S.C. § 3142(g) states:

> (g) Factors to be considered. The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning—
>
> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [18 USCS § 1591], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial,

5

> sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g); *see also United States v. Jones*, No. 20-3748, 2020 U.S. App. LEXIS 32451, at *4-5 (6th Cir. Oct. 14, 2020).

Third, the factors set forth in Section 3553(a) "include, among others, 'the nature and circumstances of the offense'; the defendant's 'history and characteristics'; the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, and afford adequate deterrence; and the need to avoid unwarranted sentencing disparities." *Jones*, 2020 U.S. App. LEXIS 32451, at *6 (quoting 18 U.S.C. § 3553(a)(1), (2), (6)).

Finally, it remains that "compassionate release is discretionary, not mandatory." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (stating that a court "may" reduce the term of imprisonment); *Keefer*, 2020 U.S. App. LEXIS 32723, at *7 ("The statute's plain text makes evident the discretionary nature of a compassionate-release decision," and "the statute lists factors that, when present, *permit* a district court to reduce a sentence") (emphasis in original).

**Application**

The Bureau of Prisons has taken significant measures to protect inmates, and its comprehensive effort to maximize home confinement in light of COVID-19 is the most appropriate forum for assessing and implementing the release of individual prisoners from incarceration. On

6

March 13, 2020, in accordance with its Coronavirus (COVID-19) Action Plan, BOP began to modify its operations to minimize the risk of COVID-19 transmission into and inside its facilities. Since that time, BOP has repeatedly revised the Action Plan to address the crisis. Beginning June 30, 2020, BOP implemented Phase Eight of the Action Plan, which currently governs operations. https://sallyport.bop.gov/co/hsd/infectious disease/covid19/index.jsp. The current operations plan follows all national guidelines and requires that all inmates be secured in their assigned quarters for a period of at least 14 days in order to stop spread of the disease. Inmates are required to wear masks at all times except eating and sleeping. Three washable cloth masks have been provided to each inmate. Only limited movement is afforded to facilitate commissary, laundry, showers, telephone, and computer access. Further, BOP has severely limited movement of inmates and detainees among its facilities. Symptomatic inmates, and asymptomatic inmates with a risk of exposure, are placed in quarantine until cleared by medical staff. Social visits are suspended indefinitely. See www.bop.gov/coronavirus/covid19_status.jsp.

At FMC Lexington, as of July 10, 2020, there have been a total of 11 confirmed staff cases with no new cases since May 31, 2020. See Memorandum for All Staff from Francisco J. Quintana, Warden FMC Lexington dated July 10, 2020. (ECF 76-2). There are 283 confirmed cases of COVID-19 within the inmate population and seven COVID-19 deaths. As of July 15, 2020 at FMC Lexington, there are 13 Active Positive cases (2 re-tests, 1 new inmate arrival), and 231 Recovery cases along with 40 resolved cases. See ECF 76-3, Email from Carlos Martinez dated 7/15/2020. As of October 23, 2020, 221 individuals have tested positive out of 1,093 tests administered, a disturbing 20% positivity rate. See Johns Hopkins Coronavirus Resource Center, https://coronavirus.jhu.edu/testing/testing-positivity, visited October 23, 2020, ("On May 12, 2020 the World Health Organization advised governments that before reopening, rates of positivity in

7

testing (i.e., out of all tests conducted, how many came back positive for COVID-19) should remain at 5% or lower for at least 14 days."). At the very least, FMC Lexington is not testing enough.

In an effort to assist inmates who are most vulnerable to the disease and pose the least threat to the community, BOP is also exercising greater authority to designate inmates for home confinement.  On March 26, 2020, the Attorney General directed BOP to prioritize transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 under the CDC risk factors.  A subsequent memorandum from the Attorney General on April 3, 2020 further directed BOP to expand the range of inmates eligible for home confinement, as authorized by the CARES Act. See Section 12003(b) (2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, enacted March 27, 2020. In assessing whether home confinement is appropriate for a particular inmate, BOP weighs numerous factors, including the inmate's medical conditions, age, crime of conviction, and conduct while in prison; conditions in the inmate's particular institution; availability of post-release transportation, housing, and supervision for the inmate; and the inmate's risk from COVID-19 if released.  Prior to releasing an inmate, BOP is directed to implement a fourteen-day quarantine in order to protect the community.

BOP asserts it is devoting all available resources to executing the Attorney General's directives, and that it is systematically assessing the inmate population to determine which inmates are most appropriate for transfer.  Since the Attorney General's memo on March 26, 2020, BOP has now placed 7,766 inmates on home confinement. See www.BOP.gov/coronavirus (last accessed October 22, 2020).  BOP claims its home confinement program provides a centralized, consistent mechanism for identifying prisoners for whom home confinement is most appropriate.

The Court hopes the resulting reduction in prison population will in turn benefit all remaining prisoners. The Courts hesitates to augment a systematic effort by granting compassionate release to prisoners who may be less deserving than others nationally, and without the capacity to conduct the comprehensive and consistent review that can be undertaken by BOP.

According to BOP, Dorn does not qualify for review as he is categorized as a Medium Risk for Recidivism. (Exhibit 4, Home Confinement Review).

Dorn is not eligible for compassionate relief under the statutory standard. The Court may only reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) if, "after considering the factors set forth in § 3553(a) to the extent that they are applicable," the Court "finds that" "extraordinary and compelling reasons warrant such a reduction" "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress directed that the Sentencing Commission, not the judiciary, adopt policies regarding "what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(a)(2)(C) & (t). The Sentencing Commission fulfilled Congress's directive by issuing USSG § 1B1.13. The policy statement provides for reduction of a sentence, after considering the § 3553(a) factors, if (i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer,

9

amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

Because the Sentencing Commission's policy statement defines "extraordinary and compelling reasons" to include only certain specified categories of medical conditions, to state a cognizable basis for a sentence reduction based on a medical condition, a defendant first must establish that his condition falls within one of the categories listed in the policy statement. If a defendant's medical condition does not fall within one of the categories specified in the application note (and no other part of the application note applies), his or her motion will be denied.

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not fall into either of those categories and therefore could not alone provide a basis for a sentence reduction. The categories encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the

10

Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).  To classify COVID-19 as an extraordinary and compelling reason would not only be inconsistent with the text of the statute and the policy statement, but would be detrimental to BOP's organized and comprehensive anti-COVID-19 regimens, could result in the scattershot treatment of inmates, and would undercut the strict criteria BOP employs to determine individual inmates' eligibility for sentence reductions and home confinement.  Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic.

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under § 3582(c) (1) (A).  If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons."  Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably could be found to be "serious" and to "substantially diminish[ ] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.  USSG § 1B1.13, cmt. n.1(A)(ii)(I).  But as part of its analysis of the totality of circumstances, the Court should consider whether the inmate is more likely to contract COVID-19 if he or she is released than if he or she remains incarcerated.  That will typically depend on the inmate's proposed release plans and whether a known outbreak has occurred at his or her institution.

11

In this case, Defendant has not asserted that he suffers from any condition that makes him more vulnerable to becoming seriously ill should he contract COVID-19. Further, according to records submitted by the BOP, Dorn tested negative for COVID-19 on June 22, 2020. For these reasons, Dorn has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582 (c)(1)(A).

Even when a defendant is able to demonstrate a potentially "extraordinary and compelling reason," compassionate release is not necessarily appropriate. Under the applicable policy statement, the Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, the Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. See § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020). Here, "the nature and circumstances" of Dorn's crime weighs against relief. 18 U.S.C. § 3553(a)(1).

Dorn was convicted of conspiring to sell a fentanyl analogue and carrying a loaded firearm when he was stopped by law enforcement at a gas station in the Dayton area. Dorn's "history and characteristics" likewise do not support relief. 18 U.S.C. § 3553(a)(1). Similar to the instant offense, Dorn has one other prior conviction for Carrying a Concealed Weapon in the Montgomery County Court of Common Pleas (2010 CR 00864), he also has a conviction for possession of heroin in the Montgomery County Court of Common Pleas (2011 CR00149). The need for the sentence to reflect the seriousness of the offense, afford adequate deterrence, and protect the public similarly cuts against relief. See 18 U.S.C. § 3553(a)(2). Considering these factors, the Court sentenced Dorn to a 41-month term of imprisonment. To date, he has served 15 months. Reduction of Dorn's sentence would thus fail to fully address these purposes of sentencing.

In view of the § 3553 sentencing factors, compassionate release is improper here. See § 3582(c)(1)(A). For the same reasons, based on his criminal history and offense conduct, Dorn cannot show that he "is not a danger to the safety of any other person or to the community," USSG § 1B1.13(2), which independently precludes relief.

### III.  CONCLUSION

Dorn does not meet the requirements necessary to be granted relief under 18 U.S.C. § 3582(c)(1)(A). Thus, the Court **DENIES** Motion for a Reduction of Sentence Under the Compassionate Release Provisions Pursuant to 18 U.S.C. 3582(c)(1)(A), the First Step Act of 2018 and Policy Statement at 1B1.13. (ECF 73).

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, October 29, 2020.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE